RUSSELL *v.* DRUMMOND.

RUSSELL
v.
DRUMMOND.

A replication to a plea setting up a written instrument as the foundation of a defence, was not required by the R. S. 1843 to be sworn to ; but if not sworn to, the execution of the instrument was not required to be proved.

If oyer of an unsealed instrument, when demanded, be given without objection, it becomes part of the record.

In a suit upon a note, oyer was given of the note and also of certain indorsements of payments upon it. *Held,* that the defendant, in pleading payment, had a right to make the indorsements a part of his plea, and that the plaintiff could not have them struck out on motion.

It is the peculiar province of the Court or jury trying a cause, to weigh the testimony and to decide upon its force, and their finding upon the mere weight of testimony will not be disturbed, except in a very clear case.

An attorney at law to whom a note is sent for collection, has no authority, merely as an attorney, to transfer the property in it to a third person.

The payment of a note by a third person, at the request of the maker, does not vest in the former any interest in the note, but raises merely an assumpsit against the maker for money paid to his use.

*Wednesday,*
*May 30.*

ERROR to the *Delaware* Circuit Court.

GOOKINS, J.—This was an action of debt, brought in the name of *Drummond,* for the use of *Russey* and *Jack,* against *Russell,* to recover the contents of a sealed note, dated in *September,* 1842, for 224 dollars and 75 cents. The suit was commenced in *August,* 1849. The issue upon which the case turned was joined on a plea of payment. There was a trial by the Court, a finding for the plaintiff for the amount of the note and interest, deducting a credit of 75 dollars. Motion for a new trial overruled, and judgment.

During the making up of the issues, as the record states, the defendant below craved oyer of the writing obligatory mentioned in the declaration, and of the indorsements thereon, which he obtained, and set them out in his plea of payment. The "*indorsements,*" as they are called, were credits entered on the back of the note, made by one *Levi L. Hunter,* an attorney at law, at various times from *January,* 1843, to *January,* 1844, equal in all to the amount of the note and interest. To this plea of payment the plaintiff filed the usual replication in denial. The defendant thereupon moved to set aside the replication, because it was not sworn to, which motion was overruled, and he

excepted. This ruling of the Circuit Court is now assigned for error; and it is insisted that as the replication in effect denied the execution of the instruments of writing which were the foundation of the defence, it should, if not sworn to, have been rejected.

The statute upon which the plaintiff in error relies, provides, that when an instrument which is the foundation of an action or defence is set forth in the pleadings, the pleading in denial, if not sworn to, shall not require proof of its execution. R. S. 1843, p. 711, sec. 216. Admitting that these credits were instruments of writing which were the foundation of the defence, within the meaning of the statute, the defendant below was not injured by the decision. It merely relieved him of the trouble of proving their execution, and furnished no ground for setting aside the replication.

The plaintiff below having, on leave, withdrawn his replication, moved to strike out so much of the plea as set out the credits, which motion was sustained, and that part of the plea was stricken out. Oyer can properly be demanded only of instruments under seal; but if oyer of an unsealed writing be given without objection when demanded, it becomes a part of the record. *Chapman* v. *Harper*, 7 Blackf. 333. Oyer having been given as well of the note, as of the indorsements upon it, the defendant had a right to make them a part of his plea, and the Circuit Court erred in ordering them to be stricken out.

On the trial the following facts appeared in evidence. *Levi L. Hunter*, an attorney at law, received from the plaintiff, who resided in *Illinois*, the note in question, for collection. Soon after he received it, he informed *James Russell*, jr., the defendant's son, that he had the note, and stated that if he would pay it he would not distress his father. The son promised to see the note paid, and subsequently made the payments shown by the credits indorsed on the note, which payments he testified he made at his father's request. This witness was introduced by the plaintiff, and testified, among other things, that *Hunter* told him if he paid the note it would be good in his hands against the

defendant, his father. After payment of the note, he received it from *Hunter*, and placed it in the hands of one *Anthony*, as a collateral security, and having discharged the liability for which it was pledged, the note was returned to him ; and he afterwards delivered it to *Jack*, one of the persons for whose use this suit is brought, as collateral security to *Jack* for having indorsed for him in bank. About the time he received it from *Anthony*, the defendant paid him 75 dollars on the note. Hs testifies further, that he never had any communication with the plaintiff on the subject of the note.

*Hunter* testified that he received the note for collection as an attorney at law ; that he entered the credits upon it as they appeared, at the time the payments were made ; that he never had any authority from the plaintiff to make any disposition of the note, other than to collect the money due upon it. It appears also that on the final payment being made, *January* 19, 1844, *Hunter* entered satisfaction of a mortgage in the recorder's office of *Delaware* county, which the plaintiff held as a security for the payment of the note.

It further appeared in evidence, that the defendant frequently acknowledged this debt as a just claim against him, after its payment by his son, and while the note was in the hands of *Anthony* and *Jack*.

We are disinclined to disturb the finding of a Court or jury, upon the mere weight of evidence. It is their peculiar province to weigh testimony and to decide upon its force ; and it is only in very clear cases that we should feel justified in doing so ; but such we are compelled to regard this case. That *Hunter*, as an attorney at law, invested with no authority over this note, except to receive payment of it, had no power to transfer the property in it to any other person, is a proposition too clear, we think, to admit of argument. The cases of *Miller* v. *Edmonston*, 8 Blackf. 291, *Corning* v. *Strong*, 1 Ind. R. 329, and numerous others which might be cited, settle this point very clearly. It does not appear from the evidence, all of which is embodied in the record, that the payee of the note ever

authorized, or even up to the time of the trial, had any knowledge of the supposed transfer. He resided in another state, and *James Russell*, jr., testified that he never had any communication with him on the subject. He testifies, it is true, that *Hunter* was active in getting the note into the hands of *Jack*, in a form to make it available to him, and that his father, the defendant, considered and acknowledged it as a just demand against him. But it is quite immaterial what view *Hunter* took of the matter, or the defendant either. The question is, had *Hunter* any power to transfer it? And further, it is to be observed, that the witnesses on both sides testify to the credits entered on the note as "payments." The only relation which the payment, by *James Russell*, jr., created between him and his father, was that of an assumpsit for money paid to his use. The simple answer to this action is, the note is paid. There being no conflict of evidence upon the question of payment, and no pretence of any authority in *Hunter* to transfer the note, the finding of the Circuit Court upon the evidence can not be sustained.

*Per Curiam.*— The judgment is reversed, and the costs of this Court are taxed against the said *Russey* and *Jack.* Cause remanded, with instructions to the Circuit Court to dismiss the suit.

*W. March*, for the plaintiff.

*T. J. Sample* and *D. Kilgore*, for the defendant.